DAVID SEROR - Bar No. 67488
JORGE A. GAITAN - Bar No. 288427
BRUTZKUS GUBNER
21650 Oxnard Street, Suite 500
Woodland Hills, CA 91367
Telephone:  (818) 827-9000
Facsimile:   (818) 827-9099
Email:       dseror@bg.law
             jgaitan@bg.law

Proposed Attorneys for Diane C. Weil,
Chapter 7 Trustee

# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA

# SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re | Case No. 1:19-bk-11696-VK |
| PETER M. SELTZER, | Chapter 7 |
| Debtor. | **TRUSTEE'S APPLICATION FOR AUTHORITY TO EMPLOY REAL ESTATE BROKER; STATEMENT OF DISINTERESTEDNESS IN SUPPORT THEREOF** |
| | [11 U.S.C. §327(a), Fed. R. Bank. P. 2014 and Local Bankr. R. 2014-1(b)] |
| | [No Hearing Required] |

**TO THE HONORABLE VICTORIA S. KAUFMAN, UNITED STATES BANKRUPTCY**

**JUDGE, THE DEBTOR AND HIS ATTORNEY, THE OFFICE OF THE UNITED STATES**

**TRUSTEE, AND ALL OTHER INTERESTED PARTIES:**

Applicant Diane C. Weil, the duly appointed and acting Chapter 7 Trustee ("Trustee") for the

bankruptcy estate (the "Estate") of the above-captioned debtor Peter M. Seltzer ("Debtor") hereby

represents as follows:

1.      This bankruptcy case ("Case") was commenced by the filing of a Voluntary Petition by

the Debtor under Chapter 11 of Title 11 of the United States Code (beginning at 11 U.S.C. § 101, *et*

*seq.*, "Bankruptcy Code") on July 9, 2019 ("Petition Date").  On December 26, 2019, this case was

converted to a Chapter 7 case.  Shortly thereafter Diane C. Weil was appointed the Chapter 7 Trustee ("Trustee"), in which capacity she continues to serve.

2.    The Trustee has determined that it is in the best interest of the Estate to sell property of the Estate located at 4179 Prado de la Puma, Calabasas, California 91302 ("Property") and requires the assistance of a real estate broker to assist him with the marketing and selling Property and wishes to employ Coldwell Banker Residential Brokerage ("Broker") to assist with such efforts. The résumés of the Broker's agents are attached collectively as **Exhibit 1** to the Declarations of William I. Friedman and Nona Green ("Declarations") and incorporated herein by this reference. The Broker has agreed to advertise the Property, to show the Property to interested parties, to represent the Estate in connection with the sale of the Property, and to advise the Trustee with respect to obtaining the highest and best offer(s) available in the present market for the Property.

3.    The Broker has determined that the Property should have a list price of $2,600,000, as set forth in the Declarations attached hereto and incorporated herein by this reference.

4.    The Trustee desires to employ the Broker on the terms and conditions stated in the Residential Listing Agreement for the Property ("Listing Agreement"), a true and correct copy of which is attached collectively as **Exhibit 2** to the Declarations and incorporated herein by this reference.

5.    The Broker has determined that it does not represent any creditor with an interest adverse to the Estate. *See,* the Declarations. The Broker does not currently represent any other entity involved in the Case, and is disinterested as that term is defined at 11 U.S.C. § 101(14).  The Broker represents and believes that it holds no interest adverse to the interests of the Estate with respect to the matters on which it will be employed.

6.    The Trustee is informed and believes that the employment of the Broker herein upon the foregoing terms is fair, equitable and in the bests interests of the Estate, and therefore the employment of the Broker on said terms should be approved.

7.    The Broker was advised of and agreed to accept employment by the Estate subject to the provisions of 11 U.S.C. § 328(a). The Broker will be paid a percentage of the purchase price at the time of the sale, subject to Court approval of said sale. The Listing Agreement is subject to

2

approval of the Court, and may be terminated at any time by Trustee upon written notice to the Broker.

8. The Broker will comply with all applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules and the Guidelines of the United States Trustee.

9. Pursuant to Loc. Bankr. R. 2014-1(b)(2), a notice of this Application (the "Notice") was sent to all parties in interest.

WHEREFORE, the Trustee respectfully requests that an order be entered authorizing the employment of the Broker under the terms of the Listing Agreement, pursuant to 11 U.S.C. §327(a) and in accordance with Rule 2014(a) of the Federal Rules of Bankruptcy Procedure and Local Bankruptcy Rule 2014-1(b)(1).

DATED:  February 25, 2020                        BRUTZKUS GUBNER

By: _____
David Seror
Jorge A. Gaitan
Proposed Attorneys for Chapter 7 Trustee,
Diane  C. Weil

**The undersigned agree to all of the above:**

Coldwell Banker Residential Brokerage

By: _____
William I. Friedman

By: _____
Nona Green

2245072

3

DocuSign Envelope ID: 2ACDA2F6-7FED-4BC6-B655-180F6912AB6F

1  approval of the Court, and may be terminated at any time by Trustee upon written notice to the

2  Broker.

3         8.   The Broker will comply with all applicable provisions of the Bankruptcy Code, the

4  Bankruptcy Rules, the Local Bankruptcy Rules and the Guidelines of the United States Trustee.

5         9.   Pursuant to Loc. Bankr. R. 2014-1(b)(2), a notice of this Application (the "Notice")

6  was sent to all parties in interest.

7         WHEREFORE, the Trustee respectfully requests that an order be entered authorizing the

8  employment of the Broker under the terms of the Listing Agreement, pursuant to 11 U.S.C. §327(a)

9  and in accordance with Rule 2014(a) of the Federal Rules of Bankruptcy Procedure and Local

10  Bankruptcy Rule 2014-1(b)(1).

11

12

13  DATED:  February 25, 2020               BRUTZKUS GUBNER

14

15                                          By:_____

16                                              David Seror
                                          Jorge A. Gaitan
                                          Proposed Attorneys for Chapter 7 Trustee,

17                                            Diane  C. Weil

18

19  **The undersigned agree to all of the above:**

20  Coldwell Banker Residential Brokerage

21

22

23  By: _____
     William I. Friedman

24

25  ┌─DocuSigned by:
26  By:  *Nona Green*       2/25/2020
     Nona Green

27

28

2245072

**STATEMENT OF DISINTERESTEDNESS IN SUPPORT OF APPLICATION FOR**

**EMPLOYMENT OF PROFESSIONAL PERSONS UNDER RULE 2014 OF THE**

**FEDERAL RULES OF BANKRUPTCY PROCEDURE**

[The following is provided in conformity with Form No. 2014-1 of the

United States Bankruptcy Court, Central District of California.]

I, William I. Friedman, declare:

1.    I am a licensed California real estate agent with Coldwell Banker Residential Brokerage, specializing in the marketing and sale of real estate properties throughout Southern California.  My business address is 2444 Wilshire Boulevard, Suite 102, Santa Monica, California 90403, phone (424) 702-3007.  Each of the facts contained in this declaration is based on personal knowledge and, if called as a witness, I could and would competently testify thereto under oath. All capitalized terms not defined herein shall have the same meaning ascribed to them in the Application.

2.    This declaration is made in support of the foregoing Application of the Trustee to employ the Broker in relation to the Property.

3.    A summary of my professional qualifications is attached hereto as **Exhibit 1** and incorporated herein by this reference.

4.    I agree, on the Trustee's behalf, to advertise the Property, to show the Property to interested parties, to represent the Estate in connection with the sale of the Property, and to advise the Trustee with respect to obtaining the highest and best offer available in the present market for the Property.

5.    It is my opinion that the Property should be listed at $2,600,000.00.

6.    The Trustee desires to employ the Broker on the terms and conditions stated in the Listing Agreement, which is an exclusive authorization and right for the Broker to sell through multiple listings. An executed copy of the Listing Agreement is attached hereto as **Exhibit 2** and incorporated herein by this reference. The Listing Agreement, which was made subject to approval by the Court, may be terminated at any time by Trustee upon written notice to the Broker.

7.    Neither the Broker nor I was paid a monetary retainer.

2264770

8.    The Broker and I will comply with all applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules and the Guidelines of the United States Trustee.

9.    I carefully reviewed my files and determined that no conflict exists in connection with this matter.  In conducting this search under the name of the Debtor, no references to the Debtor came up and based upon this review, I determined that I have not represented anyone with any interests adverse to the Debtor. Further, I have not represented any creditor or other party in this Case and believe I have no interest adverse to the Debtor or the Estate. Therefore, to the best of my knowledge, information and belief, I am a "disinterested party" in this Case as that term is defined by the Bankruptcy Code.

10.    The following is a complete description of my connection with the Debtor, insiders, the Chapter 7 Trustee, the Debtor's creditors, any other party or parties in interest, and their respective attorneys and accountants:  None, except that I have previously been employed as a broker by the Trustee and by other bankruptcy trustees in unrelated bankruptcy cases.

11.    Neither the Broker nor I am a creditor, an equity security holder or an insider of the Debtor.

12.    Neither the Broker nor I are nor were an investment banker for any outstanding security of the Debtor.

13.    Neither the Broker nor I are or were, within three years before the date of the filing of the Petition herein, an investment banker for a security of the Debtor, or an attorney for such an investment banker in connection with the offer, sale or issuance of any security of the Debtor.

14.    Neither the Broker nor I are nor were, within two years before the date of filing of the Petition herein, a director, officer or employee of the Debtor or of any investment banker for any security of the Debtor.

15.    Neither the Broker nor I hold or represent any interest materially adverse to the interests of the Estate or of any class of creditors or equity security holders, for reason of any direct or indirect relationship to, connection with, or interest in, the Debtor, or an investment banker for any security of the Debtor, the Chapter 7 Trustee, or for any other reason.

///

2264770

16. Neither the Broker nor I are a relative or employee of any judge of the United States Bankruptcy Court for the Central District of California, the United States Trustee, or any person currently employed in the Office of the United States Trustee.

17. Total number of attached pages of supporting documentation: 11.

18. After conducting the investigation described in paragraph 9 above, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, except for those matters which are stated on information and belief, and as to those matters I believe them to be true.

Executed this 25 day of February, 2020, at Santa Monica, California.

William I. Friedman

## STATEMENT OF DISINTERESTEDNESS IN SUPPORT OF APPLICATION FOR

## EMPLOYMENT OF PROFESSIONAL PERSONS UNDER RULE 2014 OF THE

## FEDERAL RULES OF BANKRUPTCY PROCEDURE

[The following is provided in conformity with Form No. 2014-1 of the

United States Bankruptcy Court, Central District of California.]

I, Nona Green, declare:

1.    I am a licensed California real estate agent with Coldwell Banker Residential Brokerage, specializing in the marketing and sale of real estate properties throughout Southern California.  My business address is 883 S. Westlake Boulevard, Westlake Village, CA 91361, telephone no. (818) 426-2292.  Each of the facts contained in this declaration is based on personal knowledge and, if called as a witness, I could and would competently testify thereto under oath.  All capitalized terms used herein shall have the meaning ascribed to them in the Application.

2.    This declaration is made in support of the foregoing Application of the Trustee to employ the Broker in relation to the Property.

3.    A summary of my professional qualifications is attached hereto as **Exhibit 1** and incorporated herein by this reference.

4.    I agree, on the Trustee's behalf, to advertise the Property, to show the Property to interested parties, to represent the Estate in connection with the sale of the Property, and to advise the Trustee with respect to obtaining the highest and best offer available in the present market for the Property.

5.    It is my opinion that the Property should be listed at $2,600,000.

6.    The Trustee desires to employ the Broker on the terms and conditions stated in the Listing Agreement, which is an exclusive authorization and right for the Broker to sell through multiple listings. An executed copy of the Listing Agreement is attached hereto as **Exhibit 2** and incorporated herein by this reference. The Listing Agreement, which was made subject to approval by the Court, may be terminated at any time by Trustee upon written notice to the Broker.

7.    Neither the Broker nor I was paid a monetary retainer.

2264770

8.    The Broker and I will comply with all applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules and the Guidelines of the United States Trustee.

9.    I carefully reviewed my files and determined that no conflict exists in connection with this matter.  In conducting this search under the name of the Debtor, no references to the Debtor came up and based upon this review, I determined that I have not represented anyone with any interests adverse to the Debtor. Further, I have not represented any creditor or other party in this Case and believe I have no interest adverse to the Debtor or the Estate. Therefore, to the best of my knowledge, information and belief, I am a "disinterested party" in this Case as that term is defined by the Bankruptcy Code.

10.    The following is a complete description of my connection with the Debtor, insiders, the Chapter 7 Trustee, the Debtor's creditors, any other party or parties in interest, and their respective attorneys and accountants:  None.

11.    Neither the Broker nor I am a creditor, an equity security holder or an insider of the Debtor.

12.    Neither the Broker nor I are nor were an investment banker for any outstanding security of the Debtor.

13.    Neither the Broker nor I are nor were, within three years before the date of the filing of the Petition herein, an investment banker for a security of the Debtor, or an attorney for such an investment banker in connection with the offer, sale or issuance of any security of the Debtor.

14.    Neither the Broker nor I are nor were, within two years before the date of filing of the Petition herein, a director, officer or employee of the Debtor or of any investment banker for any security of the Debtor.

15.    Neither the Broker nor I hold or represent any interest materially adverse to the interests of the Estate or of any class of creditors or equity security holders, for reason of any direct or indirect relationship to, connection with, or interest in, the Debtor, or an investment banker for any security of the Debtor, the Chapter 7 Trustee, or for any other reason.

8

DocuSign Envelope ID: 2ACDA2F6-7FED-4BC6-B655-...

16.  Neither the Broker nor I are a relative or employee of any judge of the United States Bankruptcy Court for the Central District of California, the United States Trustee, or any person currently employed in the Office of the United States Trustee.

17.  Total number of attached pages of supporting documentation: 11.

18.  After conducting the investigation described in paragraph 9 above, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, except for those matters which are stated on information and belief, and as to those matters I believe them to be true.

Executed this 25th day of February, 2020 at Westlake Village, California.

DocuSigned by:

*Nona Green*

Nona Green

2245072

9



RESIDENTIAL BROKERAGE

**William Friedman**

2444 WILSHIRE BLVD. #102
SANTA MONICA, CA 90403
BUS. (310) 829-3939
FAX (310) 829-7010

William Friedman is a licensed real estate agent engaged in real estate sales transactions for over 40 years. Mr. Friedman is a top producer for Coldwell Banker. He was previously appointed Designated Area Real Estate Salesperson with Federal Home Loan Mortgage Corporation.

In addition to directly assisting individual homeowners and buyers, he has represented major lending institutions, receivers and bankruptcy trustees, including:

**Trustees:**
Peter Mastan
Elissa D. Miller
David Seror
Bradley D. Sharp
Rosendo Gonzalez
Diane Weil
Richard M. Pachulski
Steve Schwaber
Byron Z. Moldo
James I. Stang
Dennis McGoldrich
David L. Ray
Peter Mastan
Alfred H. Siegel
James Leonard Brown
Lawrence Diamant
Samuel R. Biggs
Carolyn A. Dye
Nancy Knupfer
Edward M. Wolkowitz
F. Wayne Elggren
Richard K. Diamond
R. Todd Neilson
David A. Gill
Helen Ryan Frazer
Heide Kurtz
Howard Ehrenberg
Alberta Stahl
David K. Gottlieb
Brad D. Krasnoff
Michael Kogan
Amy L. Goldman
Jeffrey I. Golden
Ronald L. Durkin
Jeffrey Coyne
Linda Chu
Christopher Barclay
Sam Leslie
Jason Rund
Barry Schwartz
David L. Hahn
Jeremy Faith
Thomas P. Jeremiassen
Thomas Casey

**Lenders:**
Countrywide Home Loans
Federal Home Loan Mortgage Corp
Lincoln Service Corporation
Bank of America
Cal-Fed Enterprises
Union Federal Savings
California Federal Bank
Southern California Savings
Union Federal Bank
Residential Funding Corporation/GMAC
Coast Federal Bank

**Receivers:**
Adrian Stern
Samuel R. Biggs
David L. Ray

**COLDWELL BANKER ⧄**  |  **GLOBAL LUXURY**

NONA GREEN | LUXURY PROPERTY SPECIALIST
T. 818 426 2202 | F. 805 495 2218 | CalDRE# 00692351
Nona.Green@camoves.com

Nona Green, Broker Associate at Coldwell Banker Residential Brokerage, is a top producer in West Los Angeles and Ventura Counties. Nona is a veteran Real Estate Broker of 40 years. Nona is THE top agent in the area specializing in Equestrian and Custom properties. Nona's team includes a full time licensed assistant & transaction coordinator, a marketing specialist, a professional stager, and 3 full time buyers' agents.

A Psychology major at UC Santa Barbara, with hundreds of hours of sales training classes and seminars, Nona is also credited with the following certifications:

-California Broker's License # 00692351
-Member National Association of Realtors
-Member California Association of Realtors
-Member Conejo Simi Moorpark Association of Realtors
-Member Southland Regional Association of Realtors
-Associate member Beverly Hills/Greater L.A. Association of Realtors
-Certified REO Specialist
-JP Morgan Chase Certified Short Sale Specialist
-ePro Certified
-Certified eMarketing Specialist
-SRES Certified (Senior Real Estate Specialist)
-Cartus Network Affinity Relocation Specialist
-Certified Condominium and Planned Development Specialist
-Member National Association of Professional Women
-Centurian Award Winner
-Executive Circle Award, consistent 2% top producer nationwide

**11**

DocuSign Envelope ID: 2C0CF86C-C081-4F99-8AA9-5A455D5FEF

**CALIFORNIA ASSOCIATION OF REALTORS®**

**RESIDENTIAL LISTING AGREEMENT**
(Exclusive Authorization and Right to Sell)
(C.A.R. Form RLA, Revised 12/19)


COLDWELL BANKER
RESIDENTIAL BROKERAGE

**Date Prepared:** _02/25/2020_

1. **EXCLUSIVE RIGHT TO SELL:** _Diane C. Weil, Chapter 7 Trustee_ ("Seller")
   hereby employs and grants _Coldwell Banker Residential Brokerage_ ("Broker")
   beginning (date) _February 25, 2020_ and ending at 11:59 P.M. on (date) _August 25, 2020_ ("Listing Period")
   the exclusive and irrevocable right to sell or exchange the real property described as _4179 Prado de la Puma_
   _____, situated in _Calabasas_ (City),
   _Los Angeles_ (County), California, _91302-3624_ (Zip Code), Assessor's Parcel No. _____ ("Property").
   ☐ This Property is a manufactured (mobile) home. See addendum for additional terms.
   ☐ This Property is being sold as part of a probate, conservatorship or guardianship. See addendum for additional terms.

2. **LISTING PRICE AND TERMS:**
   **A.** The listing price shall be: _Two Million, Six Hundred Thousand_
   _____ Dollars ($ _2,600,000.00_ ).
   **B.** Listing Terms: _Subject to bankruptcy court approval and overbid: property sold "as is"._
   _Addendum is attached_ .

3. **COMPENSATION TO BROKER:**
   **Notice: The amount or rate of real estate commissions is not fixed by law. They are set by each Broker individually and may be negotiable between Seller and Broker (real estate commissions include all compensation and fees to Broker).**
   **A.** Seller agrees to pay to Broker as compensation for services irrespective of agency relationship(s), either ☒ _6.000_ percent of the listing price (or if a purchase agreement is entered into, of the purchase price), or ☐ $ _____, as follows:
   AND
      (1) If during the Listing Period, or any extension, Broker, cooperating broker, Seller or any other person procures a ready, willing, and able buyer(s) whose offer to purchase the Property on any price and terms is accepted by Seller, provided the Buyer completes the transaction or is prevented from doing so by Seller. (Broker is entitled to compensation whether any escrow resulting from such offer closes during or after the expiration of the Listing Period, or any extension.)
   **OR (2)** If within _180_ calendar days (a) after the end of the Listing Period or any extension; or (b) after any cancellation of this Agreement, unless otherwise agreed, Seller enters into a contract to sell, convey, lease or otherwise transfer the Property to anyone ("Prospective Buyer") or that person's related entity: (i) who physically entered and was shown the Property during the Listing Period or any extension by Broker or a cooperating broker; or (ii) for whom Broker or any cooperating broker submitted to Seller a signed, written offer to acquire, lease, exchange or obtain an option on the Property. Seller, however, shall have no obligation to Broker under paragraph 3A(2) unless, not later than the end of the Listing Period or any extension or cancellation, Broker has given Seller a written notice of the names of such Prospective Buyers.
   **OR (3)** If, without Broker's prior written consent, the Property is withdrawn from sale, conveyed, leased, rented, otherwise transferred, or made unmarketable by a voluntary act of Seller during the Listing Period, or any extension.
   **B.** If completion of the sale is prevented by a party to the transaction other than Seller, then compensation which otherwise would have been earned under paragraph 3A shall be payable only if and when Seller collects damages by suit, arbitration, settlement or otherwise, and then in an amount equal to the lesser of one-half of the damages recovered or the above compensation, after first deducting title and escrow expenses and the expenses of collection, if any.
   **C.** In addition, Seller agrees to pay Broker: _____
   **D.** Seller has been advised of Broker's policy regarding cooperation with, and the amount of compensation offered to, other brokers.
      (1) Broker is authorized to cooperate with and compensate brokers participating through the multiple listing service(s) ("MLS") by offering to MLS brokers out of Broker's compensation specified in 3A, either ☒ _3.000_ percent of the purchase price, or ☐ $ _____ .
      (2) Broker is authorized to cooperate with and compensate brokers operating outside the MLS as per Broker's policy.
   **E.** Seller hereby irrevocably assigns to Broker the above compensation from Seller's funds and proceeds in escrow. Broker may submit this Agreement, as instructions to compensate Broker pursuant to paragraph 3A, to any escrow regarding the Property involving Seller and a buyer, Prospective Buyer or other transferee.
   **F.** (1) Seller represents that Seller has not previously entered into a listing agreement with another broker regarding the Property unless specified as follows: _____
      (2) Seller warrants that Seller has no obligation to pay compensation to any other broker regarding the Property unless the Property is transferred to any of the following individuals or entities: _____
      (3) If the Property is sold to anyone listed above during the time Seller is obligated to compensate another broker: (i) Broker is not entitled to compensation under this Agreement; and (ii) Broker is not obligated to represent Seller in such transaction.

© 2019, California Association of REALTORS®, Inc.
Seller's Initials ( _____ ) ( _____ )
**RLA REVISED 12/19 (PAGE 1 OF 5)**

**RESIDENTIAL LISTING AGREEMENT - EXCLUSIVE (RLA PAGE 1 OF 5)**

**EXHIBIT 2**     **12**

DocuSign Envelope ID: 2C0CF86C-C081-4F99-8AA9-...

Property Address: _4179 Prado de la Puma, Calabasas, CA  91302-3624_ _____ Date: _02/25/2020_

**4. A. ITEMS EXCLUDED AND INCLUDED:** Unless otherwise specified in a real estate purchase agreement, all fixtures and fittings that are attached to the Property are included, and personal property items are excluded, from the purchase price.
**ADDITIONAL ITEMS EXCLUDED:** _____ .
**ADDITIONAL ITEMS INCLUDED:** _____ .
Seller intends that the above items be excluded or included in offering the Property for sale, but understands that: (i) the purchase agreement supersedes any intention expressed above and will ultimately determine which items are excluded and included in the sale; and (ii) Broker is not responsible for and does not guarantee that the above exclusions and/or inclusions will be in the purchase agreement.

**B. (1) Leased Or Not Owned Items:** The following items are leased or not owned by Seller:
☐ Solar power system   ☐ Alarm system   ☐ Propane tank   ☐ Water Softener
☐ Other _____

**(2) Liened Items:** The following items have been financed and a lien has been placed on the Property to secure payment:
☐ Solar power system   ☐ Windows or doors   ☐ Heating/Ventilation/Air conditioning system
☐ Other _____
Seller will provide to Buyer, as part of the sales agreement, copies of lease documents, or other documents obligating Seller to pay for any such leased or liened item.

**5. MULTIPLE LISTING SERVICE:**
**A.** Broker is a participant/subscriber to _Flex, Matrix, CLAW, CARETS_ Multiple Listing Service (MLS) and possibly others. Unless otherwise instructed in writing the Property will be listed with the MLS(s) specified above. That MLS is (or if checked ☐ is not) the primary MLS for the geographic area of the Property. All terms of the transaction, including sales price and financing, if applicable, (i) will be provided to the MLS in which the property is listed for publication, dissemination and use by persons and entities on terms approved by the MLS and (ii) may be provided to the MLS even if Property was not listed with the MLS. Seller consents to Broker providing a copy of this listing agreement to the MLS if required by the MLS.

---

**BENEFITS OF USING THE MLS; IMPACT OF OPTING OUT OF THE MLS; PRESENTING ALL OFFERS**

**WHAT IS AN MLS?** The MLS is a database of properties for sale that is available and disseminated to and accessible by all other real estate agents who are participants or subscribers to the MLS. Property information submitted to the MLS describes the price, terms and conditions under which the Seller's property is offered for sale (including but not limited to the listing broker's offer of compensation to other brokers). It is likely that a significant number of real estate practitioners in any given area are participants or subscribers to the MLS. The MLS may also be part of a reciprocal agreement to which other multiple listing services belong. Real estate agents belonging to other multiple listing services that have reciprocal agreements with the MLS also have access to the information submitted to the MLS. The MLS may further transmit listing information to Internet sites that post property listings online.

**EXPOSURE TO BUYERS THROUGH MLS:** Listing property with an MLS exposes a seller's property to all real estate agents and brokers (and their potential buyer clients) who are participants or subscribers to the MLS or a reciprocating MLS.

**CLOSED/PRIVATE LISTING CLUBS OR GROUPS:** Closed or private listing clubs or groups are not the same as the MLS. The MLS referred to above is accessible to all eligible real estate licensees and provides broad exposure for a listed property. Private or closed listing clubs or groups of licensees may have been formed outside the MLS. Private or closed listing clubs or groups are accessible to a more limited number of licensees and generally offer less exposure for listed property. Whether listing property through a closed, private network - and excluding it from the MLS - is advantageous or disadvantageous to a seller, and why, should be discussed with the agent taking the Seller's listing.

**NOT LISTING PROPERTY IN A LOCAL MLS:** If the Property is listed in an MLS which does not cover the geographic area where the Property is located then real estate agents and brokers working that territory, and Buyers they represent looking for property in the neighborhood, may not be aware the Property is for sale.

**OPTING OUT OF MLS:** If Seller elects to exclude the Property from the MLS, Seller understands and acknowledges that: (a) real estate agents and brokers from other real estate offices, and their buyer clients, who have access to that MLS may not be aware that Seller's Property is offered for sale; (b) Information about Seller's Property will not be transmitted from the MLS to various real estate Internet sites that are used by the public to search for property listings; (c) real estate agents, brokers and members of the public may be unaware of the terms and conditions under which Seller is marketing the Property.

**REDUCTION IN EXPOSURE:** Any reduction in exposure of the Property may lower the number of offers and negatively impact the sales price.

**PRESENTING ALL OFFERS:** Seller understands that Broker must present all offers received for Seller's Property unless Seller gives Broker written instructions to the contrary.

Seller's Initials ( _____ )( _____ )          Broker's/Agent's Initials ( _NG_ )( _____ )

---

Seller's Initials ( _____ ) ( _____ )

**RESIDENTIAL LISTING AGREEMENT - EXCLUSIVE (RLA PAGE 2 OF 5)**

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com          4179 Prado de la

**13**

DocuSign Envelope ID: 2C0CF86C-C081-4F99-8AA9-...

Property Address: *4179 Prado de la Puma, Calabasas, CA  91302-3624*

**B.** MLS rules generally provide that residential real property and vacant lot listings must be submitted to the MLS within 2 days or some other period of time after all necessary signatures have been obtained on the listing agreement. Broker will not have to submit this listing to the MLS if, within that time, Broker submits to the MLS an appropriate form signed by Seller.
☐ Seller elects to exclude the Property from the MLS as provided by C.A.R. Form SELM or the local equivalent form.

**C.** MLS rules allow MLS data to be made available by the MLS to additional Internet sites unless Broker gives the MLS instructions to the contrary. Seller acknowledges that for any of the below opt-out instructions to be effective, Seller must make them on a separate instruction to Broker signed by Seller. Specific information that can be excluded from the Internet as permitted by (or in accordance with) the MLS is as follows:

**(1) Property Availability On The MLS; Address On the MLS:** Seller can instruct Broker to have the MLS not display the Property or the Property address on the Internet. Seller understands that either of these opt-outs would mean consumers searching for listings on the Internet may not see the Property or Property's address in response to their search.

**(2) Feature Opt-Outs:** Seller can instruct Broker to advise the MLS that Seller does not want visitors to MLS Participant or Subscriber Websites or Electronic Displays that display the Property listing to have the features below. Seller understands (i) that these opt-outs apply only to Websites or Electronic Displays of MLS Participants and Subscribers who are real estate broker and agent members of the MLS; (ii) that other Internet sites may or may not have the features set forth herein; and (iii) that neither Broker nor the MLS may have the ability to control or block such features on other Internet sites.

**(a) Comments And Reviews:** The ability to write comments or reviews about the Property on those sites; or the ability to link to another site containing such comments or reviews if the link is in immediate conjunction with the Property display.

**(b) Automated Estimate Of Value:** The ability to create an automated estimate of value or to link to another site containing such an estimate of value if the link is in immediate conjunction with the Property display. ☐ Seller elects to opt out of certain Internet features as provided by C.A.R. Form SELI or the local equivalent form.

**SELLER REPRESENTATIONS:** Seller represents that, unless otherwise specified in writing, Seller is unaware of: (i) any Notice of Default recorded against the Property; (ii) any delinquent amounts due under any loan secured by or other obligation affecting the Property; (iii) any bankruptcy, insolvency or similar proceeding affecting the Property; (iv) any litigation, arbitration, administrative action, government investigation or other pending or threatened action that affects or may affect the Property or Seller's ability to transfer it; and (v) any current, pending or proposed special assessments affecting the Property. Seller shall promptly notify Broker in writing if Seller becomes aware of any of these items during the Listing Period or any extension thereof.

**7. BROKER'S AND SELLER'S DUTIES:**
**A.** Broker agrees to exercise reasonable effort and due diligence to achieve the purposes of this Agreement. Unless Seller gives Broker written instructions to the contrary, Broker is authorized, but not required, to (i) order reports and disclosures including those specified in 7C as necessary, (ii) advertise and market the Property by any method and in any medium selected by Broker, including MLS and the Internet, and, to the extent permitted by these media, control the dissemination of the information submitted to any medium; and (iii) disclose to any real estate licensee making an inquiry the receipt of any offers on the Property and the offering price of such offers.
**B.** Seller agrees to consider offers presented by Broker, and to act in good faith to accomplish the sale of the Property by, among other things, making the Property available for showing at reasonable times and, subject to paragraph 3F, referring to Broker all inquiries of any party interested in the Property. Seller is responsible for determining at what price to list and sell the Property.
**C.** Investigations and Reports: Seller agrees, within 5 (or____) Days of the beginning date of this Agreement, to pay for the following pre-sale reports: ☐ Structural Pest Control ☐ General Property Inspection ☐ Homeowners Association Documents ☐ Other _____.
**D.** Seller further agrees to indemnify, defend and hold Broker harmless from all claims, disputes, litigation, judgments attorney fees and costs arising from any incorrect or incomplete information supplied by Seller, or from any material facts that Seller knows but fails to disclose including dangerous or hidden conditions on the Property.

**8. DEPOSIT:** Broker is authorized to accept and hold on Seller's behalf any deposits to be applied toward the purchase price.
**9. AGENCY RELATIONSHIPS:**
**A. Disclosure:** The Seller acknowledges receipt of a ☒ "Disclosure Regarding Real Estate Agency Relationships" (C.A.R. Form AD).
**B. Seller Representation:** Broker shall represent Seller in any resulting transaction, except as specified in paragraph 3F.
**C. Possible Dual Agency With Buyer:** Depending upon the circumstances, it may be necessary or appropriate for Broker to act as an agent for both Seller and buyer, exchange party, or one or more additional parties ("Buyer"). Broker shall, as soon as practicable, disclose to Seller any election to act as a dual agent representing both Seller and Buyer. If a Buyer is procured directly by Broker or an associate-licensee in Broker's firm, Seller hereby consents to Broker acting as a dual agent for Seller and Buyer. In the event of an exchange, Seller hereby consents to Broker collecting compensation from additional parties for services rendered, provided there is disclosure to all parties of such agency and compensation. Seller understands and agrees that: a dual agent may not, without the express permission of the respective party, disclose to the other party confidential information, including, but not limited to, facts relating to either the Buyer's or Seller's financial position, motivations, bargaining position, or other personal information that may impact price, including the Seller's willingness to accept a price less than the listing price or the Buyer's willingness to pay a price greater than the price offered; and except as set forth above, a dual agent is obligated to disclose known facts materially affecting the value or desirability of the Property to both parties.

Seller's Initials  (_____)  (_____)

**RESIDENTIAL LISTING AGREEMENT - EXCLUSIVE (RLA PAGE 3 OF 5)**
Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com          4179 Prado de la

**14**

DocuSign Envelope ID: 2C0CF86C-C081-4F99-8AA9-...

Property Address: _4179 Prado de la Puma, Calabasas, CA  91302-3624_

**D. Confirmation:** Broker shall confirm the agency relationship described above, or as modified, in writing, prior to or concurrent with Seller's execution of a purchase agreement.

**E. Potentially Competing Sellers and Buyers:** Seller understands that Broker may have or obtain listings on other properties, and that potential buyers may consider, make offers on, or purchase through Broker, property the same as or similar to Seller's Property. Seller consents to Broker's representation of sellers and buyers of other properties before, during and after the end of this Agreement. Seller acknowledges receipt of a [X] "Possible Representation of More than One Buyer or Seller - Disclosure and Consent" (C.A.R. Form PRBS).

**10. SECURITY, INSURANCE, SHOWINGS, AUDIO AND VIDEO:** Broker is not responsible for loss of or damage to personal or real property, or person, whether attributable to use of a keysafe/lockbox, a showing of the Property, or otherwise. Third parties, including, but not limited to, appraisers, inspectors, brokers and prospective buyers, may have access to, and take videos and photographs of, the interior of the Property. Seller agrees: (i) to take reasonable precautions to safeguard and protect valuables that might be accessible during showings of the Property; and (ii) to obtain insurance to protect against these risks. Broker does not maintain insurance to protect Seller. Persons visiting the Property may not be aware that they could be recorded by audio or visual devices installed by Seller (such as "nanny cams" and hidden security cameras). Seller is advised to post notice disclosing the existence of security devices.

**11. PHOTOGRAPHS AND INTERNET ADVERTISING:**

**A.** In order to effectively market the Property for sale it is often necessary to provide photographs, virtual tours and other media to buyers. Seller agrees (or ☐ if checked, does not agree) that Broker or others may photograph or otherwise electronically capture images of the exterior and interior of the Property ("Images") for static and/or virtual tours of the Property by buyers and others for use on Broker's website, the MLS, and other marketing materials and sites. Seller acknowledges that if Broker engages third parties to capture and/or reproduce and display Images, the agreement between Broker and those third parties may provide such third parties with certain rights to those Images. The rights to the Images may impact Broker's control or lack of control of future use of the Images. If Seller is concerned, Seller should request that Broker provide any third parties' agreement impacting the Images. Seller also acknowledges that once Images are placed on the Internet neither Broker nor Seller has control over who can view such Images and what use viewers may make of the Images, or how long such Images may remain available on the Internet. Seller further assigns any rights in all Images to the Broker and agrees that such Images are the property of Broker and that Broker may use such Images for advertising, including post sale and for Broker's business in the future.

**B.** Seller acknowledges that prospective buyers and/or other persons coming onto the property may take photographs, videos or other images of the property. Seller understands that Broker does not have the ability to control or block the taking and use of Images by any such persons. (If checked ) ☐ Seller instructs Broker to publish in the MLS that taking of Images is limited to those persons preparing Appraisal or Inspection reports. Seller acknowledges that unauthorized persons may take images who do not have access to or have not read any limiting instruction in the MLS or who take images regardless of any limiting instruction in the MLS. Once Images are taken and/or put into electronic display on the Internet or otherwise, neither Broker nor Seller has control over who views such Images nor what use viewers may make of the Images.

**12. KEYSAFE/LOCKBOX:** A keysafe/lockbox is designed to hold a key to the Property to permit access to the Property by Broker, cooperating brokers, MLS participants, their authorized licensees and representatives, authorized inspectors, and accompanied prospective buyers. Broker, cooperating brokers, MLS and Associations/Boards of REALTORS® are not insurers against injury, theft, loss, vandalism or damage attributed to the use of a keysafe/lockbox. Seller does (or if checked ☐ does not) authorize Broker to install a keysafe/lockbox. If Seller does not occupy the Property, Seller shall be responsible for obtaining occupant(s)' written permission for use of a keysafe/lockbox (C.A.R. Form KLA).

**13. SIGN:** Seller does (or if checked ☐ does not) authorize Broker to install a FOR SALE/SOLD sign on the Property.

**14. EQUAL HOUSING OPPORTUNITY:** The Property is offered in compliance with federal, state and local anti-discrimination laws.

**15. ATTORNEY FEES:** In any action, proceeding or arbitration between Seller and Broker to enforce the compensation provisions of this Agreement, the prevailing Seller or Broker shall be entitled to reasonable attorney fees and costs from the non-prevailing Seller or Broker, except as provided in paragraph 19A.

**16. ADDITIONAL TERMS:** ☐ REO Advisory Listing (C.A.R. Form REOL) ☐ Short Sale Information and Advisory (C.A.R. Form SSIA) ☐ Trust Advisory (C.A.R. Form TA)

☐ Seller intends to include a contingency to purchase a replacement property as part of any resulting transaction

_____

_____

_____

_____

**17. MANAGEMENT APPROVAL:** If an associate-licensee in Broker's office (salesperson or broker-associate) enters into this Agreement on Broker's behalf, and Broker or Manager does not approve of its terms, Broker or Manager has the right to cancel this Agreement, in writing, within **5 Days** After its execution.

**18. SUCCESSORS AND ASSIGNS:** This Agreement shall be binding upon Seller and Seller's successors and assigns.

**19. DISPUTE RESOLUTION:**

**A. MEDIATION:** Seller and Broker agree to mediate any dispute or claim arising between them regarding the obligation to pay compensation under this Agreement, before resorting to arbitration or court action. Mediation fees, if any, shall be divided equally among the parties involved. If, for any dispute or claim to which this paragraph applies, any party (i) commences an

Seller's Initials  (_____)  (_____)

DocuSign Envelope ID: 2C0CF86C-C081-4F99-8AA9-...

Property Address: *4179 Prado de la Puma, Calabasas, CA 91302-3624*

~~action~~ without first attempting to resolve the matter through mediation, or (ii) before commencement of an action, refuses to mediate after a request has been made, then that party shall not be entitled to recover attorney fees, even if they would otherwise be available to that party in any such action. **Exclusions from this mediation agreement are specified in paragraph 19B.**

B. **ADDITIONAL MEDIATION TERMS:** The following matters shall be excluded from mediation: **(i) a judicial or non-judicial foreclosure or other action or proceeding to enforce a deed of trust, mortgage or installment land sale contract as defined in Civil Code §2985; (ii) an unlawful detainer action; (iii) the filing or enforcement of a mechanic's lien; and (iv) any matter that is within the jurisdiction of a probate, small claims or bankruptcy court. The filing of a court action to enable the recording of a notice of pending action, for order of attachment, receivership, injunction, or other provisional remedies, shall not constitute a waiver or violation of the mediation provisions.**

C. **ADVISORY:** If Seller and Broker desire to resolve disputes arising between them through arbitration rather than court, they can document their agreement by attaching and signing an Arbitration Agreement (C.A.R. Form ARB).

20. **ENTIRE AGREEMENT:** All prior discussions, negotiations and agreements between the parties concerning the subject matter of this Agreement are superseded by this Agreement, which constitutes the entire contract and a complete and exclusive expression of their agreement, and may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement. If any provision of this Agreement is held to be ineffective or invalid, the remaining provisions will nevertheless be given full force and effect. This Agreement and any supplement, addendum or modification, including any photocopy or facsimile, may be executed in counterparts.

21. **OWNERSHIP, TITLE AND AUTHORITY:** Seller warrants that: (i) Seller is the owner of the Property; (ii) no other persons or entities have title to the Property; and (iii) Seller has the authority to both execute this Agreement and sell the Property. Exceptions to ownership, title and authority are as follows:_____
_____.

☐ REPRESENTATIVE CAPACITY: This Listing Agreement is being signed for Seller by an individual acting in a Representative Capacity as specified in the attached Representative Capacity Signature Disclosure (C.A.R. Form RCSD-S). Wherever the signature or initials of the representative identified in the RCSD appear on this Agreement or any related documents, it shall be deemed to be in a representative capacity for the entity described and not in an individual capacity, unless otherwise indicated. Seller (i) represents that the entity for which the individual is signing already exists and (ii) shall Deliver to Broker, within 3 Days After Execution of this Agreement, evidence of authority to act (such as but not limited to: applicable trust document, or portion thereof, letters testamentary, court order, power of attorney, resolution, or formation documents of the business entity).

**By signing below, Seller acknowledges that Seller has read, understands, received a copy of and agrees to the terms of this Agreement.**

Seller _____   *Diane C. Weil, Chapter 7 Trustee* Date _____
        *Diane C. Weil, Chapter 7 Trustee*
Address _____ City _____ State _____ Zip _____
Telephone _____ Fax _____ E-mail _____

Seller _____ Date _____
Address _____ City _____ State _____ Zip _____
Telephone _____ Fax _____ E-mail _____

☐ Additional Signature Addendum attached (C.A.R. Form ASA)

Real Estate Broker (Firm) *Coldwell Banker Residential Brokerage* _____ DRE Lic. # *00616212*
Address *883 S. Westlake Blvd.* _____ City *Westlake Village, CA* _____ State *CA* ____ Zip *91361*
By ____Nona Green____ Tel.*(818)426-2292* E-mail *nona4re@gmail.com* DRE Lic.# *00692351* Date 2/25/2020
   *Bill Friedman /Nona Green*
By __BM Fried__ Tel.310-829-3939 E-mail billfried@earthlink.n DRE Lic.# 00672015 Date 2/25/2020

☐ Two Brokers with different companies are co-listing the Property. Co-listing Broker information is on the attached Additional Broker Acknowledgement (C.A.R. Form ABA).

© 2019 California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.
This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

**RLA REVISED 12/19 (PAGE 5 OF 5)**

**RESIDENTIAL LISTING AGREEMENT - EXCLUSIVE (RLA PAGE 5 OF 5)**

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com      4179 Prado de la

## <u>ADDENDUM TO EXCLUSIVE AUTHORIZATION AND RIGHT TO SALE</u>

Diane C. Weil, solely in the capacity as the Chapter 7 Trustee ("Trustee") of the bankruptcy estate of Peter Seltzer ("Debtor") in the Debtor's bankruptcy case in the United States Bankruptcy Court for the Central District of California, agrees to grant Coldwell Banker ("Broker") the exclusive right to negotiate a sale of the real property commonly described as 4179 Prado de la Puma, Calabasas, California("Property") upon the terms and conditions of the Exclusive Authorization and Right to Sell Property ("Exclusive Authorization"), as amended by the following terms and conditions:

1.  <u>Addendum</u>.  This Addendum applies to the Exclusive Authorization. Notwithstanding any contrary terms and conditions in the Exclusive Authorization, this Addendum shall apply.

2.  <u>No Liability</u>.  The Trustee is listing the Property for sale with the Broker in the capacity as Trustee and not in the Trustee's personal capacity, and no liability or obligations shall accrue to the Trustee personally as a result of such listing.

3.  <u>Termination</u>.  The Trustee may terminate the Exclusive Authorization at the Trustee's option and upon written notice to the Broker at any time, and no liability or obligations shall accrue to the estate or to the Trustee, either personally or in the capacity as Trustee, as a result of any such termination.

4.  <u>Abandonment</u>.  The Trustee reserves the right, in the Trustee's sole discretion, to determine not to sell the Property and to abandon the Property by serving a notice of the Trustee's intention to abandon the Property upon the Debtor, the Debtor's counsel, the United States Trustee, all creditors, and all parties in interest.  In the event of any such abandonment, the Exclusive Authorization and this Addendum shall terminate and no liability or obligations shall accrue to the estate or to the Trustee, either personally or the capacity as Trustee, as a result of any such abandonment and termination.

5.  <u>Conditions of Sale</u>.  The Broker agrees and understands that any sale of the Property shall be subject to the following terms and conditions:

124805.1    9937176A

**17**

a.    The Trustee is selling the Property in the capacity as the Trustee and not in the Trustee's personal capacity, and no liability or obligations shall accrue to the Trustee personally as a result of any sale.

b.    If for any reason, or no reason whatsoever, the Trustee is unable to deliver possession or title to the Property to any potential purchaser, the purchaser's sole remedy shall be the return of any money that the purchaser has deposited towards the purchase of the Property.

c.    The Trustee is selling the Property in an "AS IS" condition or basis by quitclaim deed without any representations or warranties whatsoever, including without limitation representations or warranties as to title, oil and mineral rights, city or government agency notifications regarding work to be done, marketability of title, ownership, physical condition, compliance with state, city or federal statutes, codes, ordinances, or regulations, geological stability, zoning, suitability for improvement, and fire insurance policies to cover any improvements on the Property, nor any assurances regarding the subdividability of the Property.

d.    The sale of the Property is subject to Bankruptcy Court approval after notice to the Debtor, the Debtor's counsel, the United States Trustee, all creditors, and all parties in interest as required by the Bankruptcy Code, Federal Rules of Bankruptcy Procedure, and Local Bankruptcy Rules.

e.    The sale is subject to overbids.

f.    The purchaser shall, at the purchaser's sole expense, acquire any and all insurance policies that the purchaser desires to cover the Property.  The Trustee does not agree to acquire or transfer any insurance policies to the purchaser.

g.    The purchaser is to arrange for all financing of the acquisition of the Property before the close of escrow.

h.    All escrow fees shall be shared and paid on a 50/50 basis by the Trustee and the purchaser.

i.    The purchaser shall, at the purchaser's sole expense, install all smoke detectors, if any, as may be required by state or local law.  The Trustee is not required to deliver

124805.1    9937176A                                2

**18**

to the purchaser a written statement of compliance with any applicable state and local law.

  j. The purchaser shall, at purchaser's sole expense, obtain any and all pest control inspection repairs that purchaser deems appropriate.

  k. If any local ordinance requires that the Property be brought into compliance with minimum energy conservation standards as a condition of sale or transfer, the purchaser shall comply with and pay for these requirements at purchaser's sole expense.

  l. Any sale is subject to the following conditions being satisfied before the close of escrow:

   (1) the Trustee must prevail with respect to any objections to the proposed sale; and

   (2) the Trustee reserves the right to reject any and all offers which in his/her judgment are insufficient.

  m. The Property is being sold subject to:

   (1) All general and special taxes that are presently due, or may become due, regarding the Property, other than property taxes, which shall be prorated as of the close of escrow;

   (2) Any and all easements, restrictions, rights and conditions of record and rights of way, against, on or regarding the Property.  Title, however, is to be transferred free of secured claims of record.

  6. <u>Payment of Commission</u>. The commission to be paid to the Broker shall only be paid from the proceeds of the sale of the Property.  The payment of the commission is subject to prior approval of the Bankruptcy Court.

  7. <u>Reduction of Listing Price and Extension of Term of Listing Agreement</u>. The Trustee may, in the Trustee's sole discretion and business judgment and without further Court order, modify the Exclusive Authorization by reducing the listing price and/or extending the term of the Exclusive Authorization.

124805.1    9937176A

3

8.    <u>Entire Agreement</u>. This Addendum and the Exclusive Authorization, to the extent that such Exclusive Authorization is not contrary to the terms and conditions herein, constitute the entire contract between the parties.  All prior agreements between the parties are incorporated into this agreement.  Its terms are intended by the parties as a final expression of their agreement with respect to such terms as are included herein, and may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement.  The parties further intend that this Addendum and the Exclusive Authorization constitute the complete, final and exclusive statement of the terms of the agreement and that no extrinsic evidence whatsoever may be introduced in any judicial or arbitration proceeding, if any, involving this Addendum and the Exclusive Authorization.

9.    <u>Bankruptcy Court Jurisdiction</u>. The Bankruptcy Court, sitting without a jury which is expressly waived, shall have exclusive jurisdiction to resolve any and all disputes relating to this Addendum and the Exclusive Authorization.  This Addendum and the Exclusive Authorization and any disputes related thereto shall be governed by California law.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
**21650 Oxnard Street, Suite 500, Woodland Hills, CA 91367.**

A true and correct copy of the foregoing document entitled**: TRUSTEE'S APPLICATION FOR AUTHORITY TO EMPLOY
REAL ESTATE BROKER; STATEMENT OF DISINTERESTEDNESS IN SUPPORT THEREOF** will be served or was
served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated
below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General
Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document.  On
**February 27, 2020,** I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that
the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated
below:

- **Katherine Bunker**    kate.bunker@usdoj.gov
- **Kathleen C Hipps**    kathleen.hipps@gmlaw.com, silvia.cerna@gmlaw.com;lorraine.corrales@gmlaw.com
- **Harris M Madnick**    hmmadnick@kramarmadnick.com
- **Noreen A Madoyan**    Noreen@MarguliesFaithLaw.com, Helen@MarguliesFaithlaw.com;
  Vicky@MarguliesFaithlaw.com; Angela@MarguliesFaithlaw.com
- **Craig G Margulies**    Craig@MarguliesFaithlaw.com, Vicky@MarguliesFaithlaw.com; Helen@MarguliesFaithlaw.com;
  Angela@MarguliesFaithlaw.com
- **William M Noall**    BKnotices@gtg.legal, wnoall@gtg.legal
- **Michael H Raichelson**    mhr@cabkattorney.com
- **United States Trustee (SV)**    ustpregion16.wh.ecf@usdoj.gov
- **Diane C Weil (TR)**    dcweil@dcweillaw.com, DCWTrustee@dcweillaw.com, dweil@iq7technology.com,
  alopez@dcweillaw.com
- **Robert P Zahradka**    caecf@tblaw.com

☐    Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:  On **February 27, 2020**, I served the following persons and/or entities at the last
known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed
envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here
constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

<u>Debtor</u>
Peter M. Seltzer
4179 Prado de la Puma
Calabasas, CA 91302-3624

☐    Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for
each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **February 27, 2020**, I served the
following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such
service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that
personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

**BY PERSONAL DELIVERY**

Honorable Victoria S. Kaufman
United States Bankruptcy Court
21041 Burbank Blvd., Bin on First Floor
Woodland Hills, CA  91367-6606

☐    Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| February 27, 2020 | MELA ZEPEDA | /s/ Mela Zepeda |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-3.1.PROOF.SERVICE**